KAREN P. HEWITT
United States Attorney
REBECCA S. KANTER
Assistant U.S. Attorney
California State Bar No. 230257
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-6747
Fax: (619) 235-2757
E-mail: rebecca.kanter@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MARIO OCHOA-LOPEZ,<br><br>    Defendant. | Criminal Case No. 08CR2030-L<br><br>**RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO COMPEL DISCOVERY**<br><br>Date:    August 5, 2008<br>Time:    2:00 p.m.<br>Courtroom:  14<br><br>The Honorable M. James Lorenz |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Rebecca S. Kanter, and hereby files its Response and Opposition to Defendant's Motions to Compel Discovery and File Further Motions. This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities, as well as the Government's Motion for Reciprocal Discovery.

//

//

//

//

# I

# STATEMENT OF FACTS

**A.  Defendant's Apprehension**

On April 25, 2008, at approximately 8:51 p.m., three occupants of a green 2000 Ford Explorer applied for admission to the United States from Mexico at the Otay Mesa Port of Entry vehicle primary lane nine. One of the individuals, Mario Ochoa-Lopez ("Defendant"), claimed to be a United States citizen by virtue of birth in Anaheim, California. He presented a California driver's license, but no proof of citizenship. When asked by Customs and Border Protection Officer R. Deocampo the purpose of the trip to Mexico, the driver, Jhustine Ochoa-Lopez, claimed she was taking Defendant to Tijuana, Mexico for cancer treatment.

A records check revealed that "Mario Ignacio Ochoa-Lopez" was the subject of an IBIS lookout. Initially, all three individuals in the car denied that Defendant had a middle name of "Ignacio." After being asked again, Defendant admitted that he was in fact "Mario Ignacio Ochoa-Lopez." All three individuals were escorted to the vehicle secondary lot. In the secondary inspection area, CBP Officer Alan Boutwell ran a fingerprint check which confirmed that Defendant was a previously deported alien with a criminal record.

**B.  Defendant's Criminal and Immigration Record**

On February 22, 2001, Defendant was convicted in the California Superior Court in Orange County of Assault to Commit Mayhem/Rape in violation of California Penal Code 220 and False Imprisonment in violation of California Penal Code 2365. He was sentenced to 9 years imprisonment. Previously, Defendant was convicted in December, 1996, of Second Degree Burglary in violation of California Penal Code Section 460(b) and sentenced to 270 days jail. He also has a prior conviction from June 9, 1995 for misdemeanor Possession of a Controlled Substance in violation of California Health and Safety Code Section 11377(a) and Inflicting Corporal Injury on a Spouse/Cohabitant in violation of California Penal Code Section 237.5(a).

Defendant had a hearing before Immigration Judge Jack W. Staton and was ordered removed on April 10, 2008. He was then removed from the United States to Mexico on April 10, 2008, two weeks before he attempted to enter the United States.

**II**

**DEFENDANT'S MOTIONS TO COMPEL DISCOVERY**

On May 6, 2008, the Government provided Defendant's original attorney, Kris J. Kraus, with 45 pages of discovery, including reports from the apprehending agency and documentation regarding Defendant's criminal history, as well as a DVD containing Defendant's invocation of his right to remain silent. On June 27, 2008, the Government provided Defendant with an additional 54 pages of discovery from his alien file, including immigration documents and criminal history documents, as well as an audio tape of his deportation hearing.

**(A)   Defendant's Statements**

The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide to Defendant the substance of Defendant's oral statements and written statements. (Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.) The Government has produced all of the Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date, including his statements to Immigration Officials when he was taken into Immigration custody as well as his statements during his Immigration hearing. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided.

**(B)   Defendant's Criminal Record and Prior Bad Acts**

The Government has provided Defendant with a copy of his known prior criminal record and, consequently, has fulfilled its duty of discovery under Rule 16(a)(1)(D)[1]. See United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990). If the Government obtains any additional documentation pertaining to Defendant's prior convictions or any criminal history in the United States or elsewhere, the Government will provide those to Defendant.

The Government will disclose in advance of trial the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b). Evidence

---

[1]   Defendant requests his prior record pursuant to Rule 16(a)(1)(B). Rule 16(a)(1)(B) pertains to written or recorded statements, not criminal records. The Government, therefore, interprets this as a request pursuant to Rule 16(a)(1)(D).

should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the evidence concerning the other bad acts and the evidence concerning the crime charged are "inextricably intertwined." United States v. Soliman, 812 F.2d 277, 279 (9th Cir. 1987).

**(C)  Documents and Physical Evidence**

The Government has complied and will continue to comply with Rule 16(a)(1)(E)[2] in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all physical evidence that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

**(D)  Scientific Reports and Examination**

At this time, the Government is not aware of any scientific tests that have been conducted. If the expert fingerprint analysis or any other scientific tests or experiments are conducted, the Government will provide Defenants with the results of any scientific tests or examinations in accordance with Rule 16(a)(1)(F)[3] when those tests results are received.

The Government recognizes its obligation under Brady and Giglio to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie. The Government is not aware of any evidence of any bias or motivation to lie on the part of prospective government witnesses. If the Government discovers the existence of information related to a government witness's bias or motive to lie, the information will be provided to the Defendant.

**(E)  Witness Discovery**

Defendant is not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. The Government is under no obligation to turn over

---

[2]  Defendant requests discovery regarding evidence seized pursuant to Rule 16(a)(1)(C). Rule 16(a)(1)(C) pertains to organizational defendants, not tangible evidence. The Government, therefore, interprets this as a request pursuant to Rule 16(a)(1)(E).

[3]  Defendant makes this request pursuant to Rule 16(a)(1)(D). Because that sub-section pertains to a defendant's prior record, the United States interprets this as a request under Rule 16(a)(1)(F), which is the sub-section pertaining to examinations and tests.

the criminal records or rap sheet of its potential witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the United States intends to call in its case-in-chief.

The Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling. The Government strenuously objects to providing any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic because such information is not discoverable under Rule 16, Brady, Giglio, Henthorn, or any other Constitutional or statutory disclosure provision.

The Government has already provided Defendant with reports which contain the names and telephone numbers of the inspectors, officers and special agents involved in arresting and interviewing Defendant. In its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987). The Government strenuously objects to providing the home addresses to Defendant. In non-capital cases, the Government is not even required to disclose the names of its witnesses prior to trial. United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992); (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996); see also United States v. Bejasa, 904 F.2d 137 (2d Cir. 1990) (holding that United States did not improperly deny defendant access to government witnesses whose telephone numbers and addresses the government refused to provide because defendant knew the identities of the government witnesses and presumably knew their telephone numbers or could have contacted them through the exercise of due diligence).

The Government will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the Government intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992). If the undersigned Assistant U.S.

Case 3:08-cr-02030-L   Document 8   Filed 07/31/2008   Page 6 of 10

Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an <u>in camera</u> inspection and review.

**(F)** **Jencks Act Material**

Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500, into the Federal Rules of Criminal Procedure. The Jencks Act requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. §3500(b). For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by her, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. §3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. <u>United States v. Boshell</u>, 952 F.2d 1101, 1105 (9th Cir. 1991) (<u>citing</u> <u>Goldberg v. United States</u>, 425 U.S. 94, 98 (1976)). There is no applicable Jencks material at this time. If the case proceeds to trial, the Government will produce any materials covered by the Jencks Act relevant to the testifying witness(es).

**(G)** **Informants and Percipient Witnesses**

As indicated elsewhere, the United States has already revealed the names of the percipient witnesses to Defendant's illegal entry and his prior deportation. At this time, the United States is unaware of any informants or cooperating witnesses related to this case. If the United States determines that there is a confidential informant whose identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," it will disclose that person's identity to the Court for in-chambers inspection. <u>See</u> <u>Roviaro v. United States</u>, 353 U.S. 53, 60-61 (1957); <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501, 1505 (9th Cir. 1997).

An agreement that the Government makes with a witness for testimony in exchange for money or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure as impeachment evidence under <u>Brady</u> and <u>Giglio</u>. <u>See</u> <u>United States v. Kojayan</u>, 8 F.3d 1315, 1322-23 (9th Cir. 1993); <u>Benn v. Lambert</u>, 238 F.3d 1040, 1054-60 (9th Cir. 2002). The Government is not
6                                           Criminal Case No. 08CR2030-L

1 aware of any Giglio information related to this case.  If the Government discovers the existence of
2 Giglio information, the information will be provided to the Defendant.

3 **(H)    Brady Material**

4 　　　　The Government has and will continue to perform its duty under Brady v. Maryland, 373 U.S.
5 83 (1963) to disclose material exculpatory information or evidence favorable to Defendant when such
6 evidence is material to guilt or punishment.  The Government recognizes that its obligation under Brady
7 covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who
8 testify on behalf of the United States.  See Giglio v. United States, 405 U.S. 150, 154 (1972); United
9 States v. Bagley, 473 U.S. 667, 676-77 (1985).  This obligation also extends to evidence that was not
10 requested by the defense. Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976).
11 "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability
12 that, had the evidence been disclosed to the defense, the result of the proceeding would have been
13 different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc).  The final determination
14 of materiality is based on the "suppressed evidence considered collectively, not item by item." Kyles
15 v. Whitley, 514 U.S. 419, 436-37 (1995).

16 　　　　Brady does not, however, mandate that the Government open all of its files for discovery.  See
17 United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam).  Under Brady, the United
18 States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United
19 States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other
20 sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the
21 defendant already possesses (see United States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999)
22 amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S.
23 Attorney could not reasonably be imputed to have knowledge or control over.  See United States v.
24 Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001).   Brady does not require the Government "to create
25 exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir.
26 1980), but only requires that it "supply a defendant with exculpatory information of which it is aware."
27 United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

28 　　　　The Government will provide Defendant with all Brady material that may result in mitigation

1  of Defendant's sentence.  Nevertheless, the Government is not required to provide information bearing
2  on Defendant's sentence until after Defendant's conviction or guilty plea and prior to her sentencing
3  date.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) (no Brady violation occurs
4  "if the evidence is disclosed to the defendant at a time when the disclosure remains in value").

### III

### GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY

**A.     All Evidence That Defendant Intends To Introduce In His Case-In-Chief**

8  Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E), the
9  Government is entitled to reciprocal discovery under Rule 16(b)(1).  Pursuant to Rule 16(b)(1), the
10 Government requests that Defendant permit the Government to inspect, copy and photograph any and
11 all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which
12 are within the possession, custody, or control of Defendant and which Defendant intends to introduce
13 as evidence in his case-in-chief at trial.

14 The Government further requests that it be permitted to inspect and copy or photograph any
15 results or reports of physical or mental examinations and of scientific tests or experiments made in
16 connection with this case, which are in the possession and control of Defendant, which he intends to
17 introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends
18 to call as a witness. The Government also requests that the Court make such order as it deems necessary
19 under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which
20 it is entitled.

**B.     Reciprocal Jencks – Statements By Defense Witnesses (Other Than Defendant)**

22 Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires
23 production of the prior statements of all witnesses, except a statement made by Defendant.  The time
24 frame established by Rule 26.2 requires the statements to be provided to the Government after the
25 witness has testified.  However, to expedite trial proceedings, the Government hereby requests that
26 Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before
27 trial to be set by the Court.  Such an order should include any form in which these statements are
28 memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

**IV**

**CONCLUSION**

For the foregoing reasons, the Government requests that the Court deny Defendant's motions, except where unopposed, and grant the Government's motion for reciprocal discovery.

DATED: July 31, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/***Rebecca Kanter***
REBECCA S. KANTER
Assistant United States Attorney
Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR2030-L |
| | ) | |
| Plaintiff, | ) | |
| | ) | CERTIFICATE OF SERVICE |
| v. | ) | |
| | ) | |
| MARIO OCHOA-LOPEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, REBECCA S. KANTER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Ricardo M. Gonzalez

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 31, 2008.

/s/ ***Rebecca Kanter***
REBECCA S. KANTER